UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MT. HAWLEY INSURANCE COMPANY,

                                Plaintiff,

                 - against-

3750 VETERANS, LLC, AND MB PONTIAC RE, LLC

                            Defendants.
------------------------------------------------------------------X

Case No.

**COMPLAINT FOR**
**<u>DECLARATORY RELIEF</u>**

Plaintiff Mt. Hawley Insurance Company ("Mt. Hawley"), through its undersigned counsel, as and for its complaint against defendants 3750 Veterans, LLC ("Veterans") and MB Pontiac RE, LLC ("MB") (collectively "Defendants"), respectfully alleges the following:

<u>**THE PARTIES**</u>

1.      At all times relevant hereto, Mt. Hawley was an insurance company organized under the laws of the State of Illinois, maintaining its principal place of business at 9025 North Lindbergh Drive in Peoria, State of Illinois.  Thus, Mt. Hawley is a citizen of the State of Illinois, and is not a citizen of the State of Louisiana.

2.      At all times relevant hereto, Veterans was a Louisiana limited liability company. Veterans' members are Robert M. Murphy and Anne Barrios Gauthier, both of whom are residents and citizens of Louisiana.  Thus, Veterans is a citizen of the State of Louisiana, but not the State of Illinois. Veterans may be served through its registered agent, Robert M. Murphy, at 806 Rue Decatur, Metairie, Louisiana, 70005.

3.      At all times relevant hereto, MB was a Louisiana limited liability company.  MB's sole member is Matthew Bowers, who is a resident and citizen of Louisiana.  Thus, MB is a citizen

of the State of Louisiana, but not the State of Illinois. MB may be served through its registered

agent, Stephen I. Dwyer, at 3000 W. Esplanade Avenue, Suite 200, Metairie, Louisiana, 70002.

## JURISDICTION AND VENUE

4.      This is an action for declaratory relief pursuant to Fed. R. Civ. P. 57 and 28 U.S.C.

§ 2201.

5.      This Court has original jurisdiction of this civil action pursuant to 28 U.S.C. 1332,

in that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and

is between citizens of different States.

6.      Veterans and MB are subject to personal jurisdiction pursuant to New York General

Obligations Law sections 5-1401 and 5-1402.

7.      Venue is proper in this district pursuant to 28 U.S.C. 1391(b)(3) because this

lawsuit seeks a declaration of the parties' rights under a policy of insurance that contains the

following mandatory forum selection provision:

**LEGAL ACTION CONDITIONS ENDORSEMENT**

This endorsement adds the following to LEGAL ACTION
AGAINST US elsewhere in the policy:

All matters arising hereunder including questions relating to the
validity, interpretation, performance and enforcement of this Policy
shall be determined in accordance with the law and practice of the
State of New York (notwithstanding New York's conflicts of law
rules).

It is agreed that in the event of the failure of the Company to pay
any amount claimed to be due hereunder, any Named Insured, any
additional insured, and any beneficiary hereunder shall submit to the
jurisdiction of a court of competent jurisdiction in the State of New
York, and shall comply with all the requirements necessary to give
such court jurisdiction.  Any litigation commenced by any Named
Insured, any additional insured, or any beneficiary hereunder against
the Company shall be initiated in New York. Nothing in this clause
constitutes or should be understood to constitute a waiver of the

Company's right to remove an action to a United States District Court.

8.      Declaratory relief is proper regarding the subject matter of this action because there is an actual controversy between the parties.  By this action, Mt. Hawley seeks a declaration as to the rights and obligations under an insurance policy issued by Mt. Hawley to Veterans in connection with a claim for insurance benefits arising from alleged storm damage to property owned by Veterans, which property was allegedly sold to MB following the alleged storm damage, along with an alleged assignment of Veterans' rights and interests in Veterans' claims to insurance proceeds under the insurance policy at issue.  The dispute involves issues regarding the amount, if any, that Mt. Hawley is required to pay based on the terms of the policy at issue.  Under Title 28 U.S.C. § 2201, this Court has the power to declare obligations and duties of the parties and to give such other relief as may be necessary.

## GENERAL ALLEGATIONS

9.      Mt. Hawley issued a commercial property insurance policy to Veterans, bearing policy number MCP0171036, which was effective from December 31, 2020 through December 31, 2021 (the "Mt. Hawley Policy").  A true and correct copy of the Mt. Hawley Policy is attached hereto and incorporated herein as **Exhibit A**.

10.      The property insured under the Mt. Hawley Policy consisted of a two-story retail/office building located at 3750 Veterans Memorial Boulevard, Metairie, Louisiana, 70002 (the "Property").

11.      On September 21, 2021, Veterans submitted notice of a claim for wind damage to the roof and glass of the Property allegedly occurring as a result of Hurricane Ida on or about August 29, 2021 (the "Claim").

12.     On September 22, 20221 and again on September 24, 2021, Mt. Hawley's claims examiner, Anthony Hart, attempted to contact Veterans' representative, Robert Murphy, concerning the Claim and also sent an email to Veterans advising of the duties and conditions of the Mt. Hawley Policy. On September 24, 2021, Mt. Hawley received a letter or representation from Veteran's counsel, Gauthier Murphy & Houghtaling, LLC ("GMH"), advising that Kevin Sloan of GMH would be handling the Claim on behalf of Veterans.  Sloan also left a voicemail advising of his involvement to which Hart responded with a return voicemail.

13.     On September 27, 2021, Mt. Hawley received another letter of representation from Henry Roth of GMH advising that Roth would be handling the claim for Veterans.  Based on the alleged damage, Mt. Hawley engaged independent adjuster Michael Wysoczan of Engle Martin & Associates ("EMA"), building consultant Bret O'Steen of Young & Associates ("Young"), and engineering consultant Chase Anderson of Thornton Tomasetti ("Thornton") to assist in the investigation and damage assessment. Thereafter, Roth advised that Veterans' building manager, Jacque LaFleur, was authorized to meet at the Property for a brief site visit, which took place on September 27, 2021.

14.     On October 1, 2021, a second site inspection took place attended by O'Steen and Anderson (Wysoczan was also in attendance for a portion of the inspection), along with Roth, Veterans' contractor, Jubilee Construction, Inc. ("Jubilee"), and LaFleur.  During this inspection, Roth advised that a Methodist Church building attached to the rear of the Property was not part of their risk and was not involved in the Claim. Nevertheless, a Xactimate estimate for scope and repair prepared by Jubilee, which Roth provided during this inspection, listed the church building.

15.     By letter to Roth dated October 28, 2021, Hart summarized the brief history of Claim including the inspections, advising that the Mt. Hawley adjustment team had noted several

areas of prior repairs and paint and that Mt. Hawley was awaiting receipt of the engineer's report in regard to the inspections.  Hart's letter also acknowledged Roth's advice on October 11, 2021, regarding damage to HVAC mechanicals on the roof, and advised Roth that Mt. Hawley would engage a mechanical engineer with Thornton to schedule and arrange an inspection of the units. This letter also detailed numerous deficiencies in the Jubilee estimate and advised that this estimate was not a satisfactory proof of loss.

16.     On November 1, 2021, Chris Sheridan of Thornton performed an additional inspection of the Property to investigate the rooftop mechanical equipment. Sheridan was accompanied during this inspection by a representative of Veterans.

17.     On November 12, 2021, Roth sent a letter to Mt. Hawley in which he incorrectly claimed that the Jubilee Xactimate estimate was a satisfactory proof of loss and accused Mt. Hawley of violating Louisiana statutes for failure to pay what he characterized as the "undisputed amount" of the Claim.

18.     On November 19, 2021, Mt. Hawley Claims Examiner, Tony Avila, who had assumed handling of the Claim, sent a letter to Roth in which Avila expressed disagreement in the strongest possible terms with the contentions in Roth's November 12 letter, and again advised Veterans of the numerous deficiencies in the Jubilee estimate previously detailed in Mt. Hawley's October 28, 2021 letter. Those deficiencies included the fact that the Jubilee estimate included costs to make repairs to the church with no explanation as to why this was done or if the church is being claimed under the Mt. Hawley Policy, that Jubilee included costs to make repairs to the exterior of the building joists between the bricks along with previous repair attempts in those same areas, and that the Jubilee estimate included costs to make interior repairs to spaces that were leased out with no supporting documentation such as the leases for those locations. Avila further

noted that Mt. Hawley had not received any additional information that would address these deficiencies including any revised estimates, engineering reports or the requested lease agreements.

19.     With his November 19 letter, Avila also provided a copy of a November 12, 2021 summary of opinions prepared by Anderson pending receipt of Anderson's full engineering report. Anderson's summary identified limited storm related damage including damage to two sections of synthetic stucco finish, a displaced gutter section that abraded a section of roof shingles (approximately 24 square feet), separation to the interior finish above the store front windows, and limited event-related distress to rooftop mechanical units. Mt. Hawley requested that Young prepare an estimate of the cost to repair the limited damage noted by Anderson, and a copy of Young's estimate was also forwarded with Avila's November 19 letter.  Young estimated the cost of the repairs to be $10,635.09.  Because the cost of repairs did not exceed the applicable named storm deductible, Avila advised Roth that Mt. Hawley was unable to issue a payment for the loss. In addition, Avila advised that the submitted October 20, 2021 proof of loss (which was again based on the deficient Jubilee estimate), indicated that Veterans intended to submit a Business Income loss claim, but that Veterans had still not submitted any support for any Business Income loss.  Despite Veterans' failure to provide satisfactory proof of loss or any additional information that would address the deficiencies in the Jubilee estimate, Avila advised that Mt. Hawley would continue to investigate the Claim under a complete reservation of rights and would provide a final letter highlighting the full engineering report upon receipt and Mt. Hawley's review of the HVAC and sign invoices submitted by Roth on November 1, 2021.

20.     On February 14, 2022, Avila sent another letter to Roth detailing the up-to-date status of Mt. Hawley's investigation of the Claim and forwarding a copy of Thornton's February

3, 2022 engineering report.  The full Thornton report confirmed that while the property had sustained limited event-related damage as noted in the earlier summary report, the vast majority of items listed in the Jubilee estimate were for building components that did not sustain distress, or which were not related to the event.  In addition, Thornton concluded that the Jubilee estimate includes complete removal and replacement for the roof of the adjacent church property, which is separate from the insured Property.  Avila also advised Roth that while Mt. Hawley agreed with the scope and cost presented for sign repair, after adding that cost to the previous Young estimate for the limited storm-related damage documented by Thornton, the total amount of the property damage loss did not exceed the named storm deductible, and therefore, Mt. Hawley was still unable to issue any payment for the loss.

21.     Finally, in the February 14, 2022 letter, Avila advised that in the event Veterans was making a claim for business income loss, it should continue discussions with the independent consultant retained by Mt. Hawley to analyze that claim, Meaden and Moore, and provide the information Meaden & Moore had requested from the insured on January 20, 2021.

22.     On August 23, 2022, Roth sent a letter to Mt. Hawley advising that Veterans sold the Property to MB and, as part of the sale, assigned to MB all of the rights and interests in and to all of Veterans' claims under the Mt. Hawley Policy.  Accordingly, Roth advised that GMH was handling the Claim on behalf of MB.  In this letter Roth reiterated his earlier position, this time on behalf of MB, that satisfactory proof of loss had been previously provided primarily based on the Jubilee estimate discussed above in the amount of $2,833,184.41. In the August 23 letter, however, Roth asserted, on behalf of MB, that its property damage loss was estimated to be $668,159.00 based on an estimate prepared by Gibbs Construction, LLC purportedly reflecting the cost of repairing damage caused by Hurricane Ida.   No explanation was provided regarding why this

estimate was only a fraction of the previously claimed amount of almost $3 million, nor did Roth's letter provide any analysis supporting the assertion that this amount is attributable to damage caused by the storm. Similarly, no information was provided regarding the identity or qualifications of the individual from Gibbs who purportedly made any determination concerning the cause of the alleged damages. No engineering report or analysis was provided.

23.     Mt. Hawley forwarded the Gibbs estimate to its independent engineering consultant, Anderson, and its independent building consultant, O'Steen, for analysis and comment. Both Anderson and O'Steen concluded that the information provided in the Gibbs estimate did not change their opinions and conclusions.

24.     By letter dated September 26, 2022, Avila advised Roth of Anderson's and O'Steen's analysis and conclusions regarding the Gibbs estimate and again advised that Mt. Hawley's claim investigation has not identified any covered damage beyond the amounts previously identified which do not exceed the named storm deductible.

## THE MT. HAWLEY POLICY

25.     The following provisions of the Mt. Hawley Policy are relevant to the issues presented in this matter:

### BUILDING AND PERSONAL PROPERTY COVERAGE FORM

**A.**     **Coverage**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

**1.**     **Covered Property**

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.**, and is limited in **A.2.**, **Property Not Covered**,

if a Limit of Insurance is shown in the Declarations for that type of property.

**a.** **Building**, meaning the building or structure described in the Declarations . . .

**2.** **Property Not Covered**

Covered Property does not include:

\* \* \*

**q.** The following property while outside of buildings:

\* \* \*

**(2)** Fences, radio or television antennas (including satellite dishes and their lead-in wiring, masts or towers, trees, shrubs of plants (other than "stock" of trees, shrubs or plants), all except as provided in the Coverage Extensions.

\* \* \*

**5.** **Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

\* \* \*

**e.** **Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), trees, shrubs and plants (other than "stock" of trees, shrubs or plants), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

**(1)**   Fire;

**(2)**   Lightning;

**(3)**   Explosion;

**(4)**   Riot or Civil Commotion; or

**(5)**   Aircraft.

\* \* \*

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant.  These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

\* \* \*

**B.**   **Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

\* \* \*

**D.**   **Deductible**

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss, and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible.  But the Deductible will be applied only once per occurrence.

**E.**   **Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

* * *

**3.** **Duties In The Event Of Loss Or Damage**

    **a.**    You must see that the following are done in the event of loss or damage to Covered Property:

* * *

        **(6)**    As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records. Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

* * *

        **(8)**    Cooperate with us in the investigation or settlement of the claim.

**4.** **Loss Payment**

    **a.**    In the event of loss or damage covered by this Coverage Form, at our option, we will either:

        **(1)**    Pay the value of lost or damaged property;
        **(2)**    Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;
        **(3)**    Take all or any part of the property at an agreed or appraised value; or
        **(4)**    Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the

Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

\* \* \*

## CAUSES OF LOSS – SPECIAL FORM

**A.   Covered Causes of Loss**

When Special is shown in the Declarations, Covered Causes of Loss means Risks of Direct Physical Loss unless the loss is:

1.   Excluded in Section **B.**, Exclusions; or

2.   Limited in Section **C.**, Limitations;

that follow.

**B.   Exclusions**

\* \* \*

**2.**   We will not pay for loss or damage caused by or resulting from any of the following:

**b.**   Delay, loss of use or loss of market;

\* \* \*

**d.**   **(1)**   Wear and tear;

**(2)**   Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

\* \* \*

**(4)**   Settling, cracking, shrinking or expansion;

\* \* \*

But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that

"specified cause of loss" or building glass breakage.

\* \* \*

**f.** Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

\* \* \*

**3.** We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

\* \* \*

**c.** Faulty, inadequate or defective:

\* \* \*

**(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**(3)** Materials used in repair, construction, renovation or remodeling; or

**(4)** Maintenance;

of part or all of any property on or off the described premises.

**4.** **Special Exclusions**

The following provisions apply only to the specified Coverage Forms.

**a.** **Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, Or Extra Expense Coverage Form**

We will not pay for:

\* \* \*

    **(5)**    Any other consequential loss.

\* \* \*

**C.**    **Limitations**

The following limitations apply to all policy forms and endorsements, unless otherwise stated.

**1.**    We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

\* \* \*

    **c.**    The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

    **(1)**    The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

    **(2)**    The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

\* \* \*

**G.**    **Definitions**

\* \* \*

**2.**    "Specified causes of loss" means the following:  fire, lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action;

falling objects; weight of snow, ice or sleet; water damage.

\* \* \*

**c.**   Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing , heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam.

\* \* \*

## COMMERCIAL PROPERTY CONDITIONS

\* \* \*

**H.**   **POLICY PERIOD, COVERAGE TERRITORY**

Under this Coverage Part:

**1.**   We cover loss or damage commencing:

   **a.**   During the policy period shown in the Declarations; and
   **b.**   Within the coverage territory.

\* \* \*

## BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

**A.**   **Coverage**

   **1.**   **Business Income**

\* \* \*

We will pay for the actual loss or Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit of

Insurance is shown in the Declarations.  The loss or damage must be caused by or result from a Covered Cause of Loss….

\* \* \*

**C.    Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**2.**    Duties In The Event Of Loss

**a.**    You must see that the following are done in the event of loss:

**(5)**    As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(6)**    Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request.  We will supply you with the necessary forms.

\* \* \*

**F.    Definitions**

\* \* \*

**3.**    "Period of restoration" means the period of time that:

**a.**    Begins:

**(1)**    72 hours after the time of direct physical loss or damage  for Business Income Coverage; or

**(2)**    Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

Caused by or resulting from any Covered Cause of Loss at the described premises; and

**b.**     Ends on the earlier of:

    **(1)**     The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

    **(2)**     The date when business is resumed at a new permanent location.

\* \* \*

**6.**     "Suspension" means:

**a.**     The slowdown or cessation of your business activities; or

**b.**     That a part or all of the described premises is rendered untenantable, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

    26.     The following endorsements of the Mt. Hawley Policy are also applicable to the Claim.

## WIND DRIVEN RAIN COVERAGE ENSORSEMENT

We will pay for direct physical loss or damage to the interior of any building, or to personal property in the building caused by or resulting from Wind Driven Rain. Wind Driven Rain is defined as the direct physical loss or damage to the interior of any building covered caused by the sudden and temporary entry of rain, snow, sleet, or ice into the building when propelled by wind, but which does not cause building damage to first occur prior to rain, snow, sleet, or ice entering the building. All loss or damage caused by or resulting from Wind Driven Rain will be subject to the deductible applicable to the occurrence.

### A.     Exclusions and Limitations

**1.**     For the purposes of this endorsement, we will not pay for loss or damage caused by or resulting from any of the following:

\* \* \*

    **c.**    Faulty, inadequate, or defective:

        \* \* \*

        **(2)**    Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

        **(3)**    Materials used in repair, construction, renovation or remodeling; or

        **(4)**    Maintenance;

        of part or all of any property on or off the covered location.

**2.**    This endorsement does not insure against loss resulting from:

    **a.**    Continuous or repeated seepage or leakage of water into a building; or

    **b.**    The entry of rain, snow, sleet, or ice into the building if such entry was caused by failure to properly secure the building or by failure to protect the building against normal wear and tear, rust, corrosion, or decay.

\* \* \*

## DECLARATIONS – DEDUCTIBLE ADDENDUM

The following deductible wording is in addition to all other deductible wording found elsewhere in this policy. All other deductible wording found in and made ap art of this policy also applies. Each claim for loss or damage will be adjusted separately.

\* \* \*

1.00% of Total Insurable Values Per Location (including time element if applicable) at the time of loss subject to a minimum of $25,000 Per Occurrence for Named Storm and subject to an aggregate of $36,300 per Policy Term for Named Storm.

Upon exhaustion of the aggregate deductible, any subsequent loss or damage caused by or resulting from Named Storm occurring within the policy term will have a per occurrence maintenance deductible of $10,000.

* * *

Total Insurable Values is defined as the full value of covered property, including time element if applicable, subject to the valuation terms and conditions of the policy. Total Insurance Values are calculated at the time of loss or damage.

27.     As noted above, Mt. Hawley determined that the Property did not sustain any covered damage that would exceed the applicable deductible of the Mt. Hawley Policy. Nevertheless, Veterans and/or MB is seeking to recover for damage that was either not caused by a Covered Cause of Loss or damage that commenced before the policy period and is otherwise excluded.

28.     In addition, Exclusion **B.2.d.** above excludes loss or damage caused by, among other things, wear and tear, decay, deterioration, settling, cracking, and shrinking. To the extent it is determined that the Claim includes damage to the Property caused by one or more of these excluded causes, there is no coverage under the Mt. Hawley Policy.

29.     In addition, Exclusion **B.2.f.** above excludes loss or damage caused by continuous or repeated seepage or leakage of water that occurs over a period of 14 days or more. Mt. Hawley's claim investigation determined that certain areas displayed evidence of repeated water damage. To the extent it is determined that such damage occurred over a period of 14 days or more, there is no coverage under the Mt. Hawley Policy.

30.     In addition, Exclusion **B.3.c.** above excludes coverage for loss caused by or resulting from faulty, inadequate, or defective construction, repairs, materials used in repairs, and maintenance. To the extent it is determined that the Claim includes damage caused by faulty,

inadequate or defective installation, maintenance, and/or repairs to the Property, there is no coverage for that damage.

31.     In addition, the WIND DRIVEN RAIN COVERAGE ENDOSEMENT excludes loss or damage caused by or resulting from faulty, inadequate or defective workmanship, repair, construction, or materials used in same, or maintenance.  To the extent it is determined that the Claim includes damage caused by these, there is no coverage for that damage.

32.     In addition, Limitation **C.1.c.(2)** above provides that there is no coverage for interior water damage unless the building first sustains damage by a Covered Cause of Loss.  The Claim includes water damage to the interior of the building comprising the Property.  Mt. Hawley's claim investigation determined that the Property did not sustain any covered damage through which the water entered.  These damages are not covered under the Mt. Hawley Policy.

33.     Despite requests for information and documentation supporting a claim for business interruption loss, no supporting information or documentation has been provided, and thus, Veterans and/or MB have failed to establish any such loss and have failed to cooperate in the investigation or settlement of any business income portion of the Claim.

34.     The Mt. Hawley Policy also contains the following Replacement Cost Optional Coverage:

> **G.     Optional Coverages**
>
> If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.
>
> * * *
>
> **3.     Replacement Cost**
>
> > **a.**     Replacement Cost (without deduction for depreciation) replaces Actual   Cash Value in the Valuation Loss Condition of this Coverage Form.

**b.** This Optional Coverage does not apply to:

   **(1)** Personal property of others;

   **(2)** Contents of a residence;

   **(3)** Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or

   **(4)** "Stock", unless the Including "Stock" option is shown in the Declarations.

Under the terms of this Replacement Cost Optional Coverage, tenants' improvements and betterments are not considered to be the personal property of others.

**c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

**d.** We will not pay on a replacement cost basis for any loss or damage:

   **(1)** Until the lost or damaged property is actually repaired or replaced; and

   **(2)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

With respect to tenants' improvements and betterments, the following also apply:

   **(3)** If the conditions in **d.(1)** and **d.(2)** above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set

forth in the Valuation Loss Condition of this Coverage Form; and

**(4)** We will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.

**e.** We will not pay more for loss or damage on a replacement cost basis than the least of **(1)**, **(2)** or **(3)**, subject to **f.** below:

**(1)** The Limit of Insurance applicable to the lost or damaged property;

**(2)** The cost to replace the lost or damaged property with other property [of like kind or quality].[1]

**(3)** The amount actually spent that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost described in **e.(2)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

**f.** The cost of repair or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

35. The Replacement Cost Optional Coverage provides that payment on a replacement cost basis is available under the Mt. Hawley Policy only if all of the conditions stated in the Optional Coverage are satisfied. These conditions include, without limitation, that the damaged property is actually repaired or replaced, and that the repairs or replacements are made as soon as

---

[1] As amended by endorsement.

reasonably possible after the loss or damage.  The Claim includes loss or damage that has not been repaired or replaced.

## AS AND FOR A FIRST CLAIM FOR RELIEF
*(Declaratory judgment)*

36.     Mt. Hawley re-alleges and incorporates by reference the allegations above.

37.     By virtue of the foregoing, there exists an actual, justiciable controversy between the parties.

38.     Mt. Hawley seeks a declaratory judgment that the Property did not sustain covered damage under the Mt. Hawley Policy exceeding the deductible.

39.     Mt. Hawley further seeks a declaration that it does not owe any amounts to Veterans or MB.

40.     Mt. Hawley further seeks a declaration that Veterans and/or MB breached the Loss Conditions of the Mt. Hawley Policy and failed to cooperate in Mt. Hawley's investigation of the Claim.

## PRAYER FOR RELIEF

**WHEREFORE**, Mt. Hawley Insurance Company respectfully requests that the Court enter judgment finding and declaring the rights of the parties as follows:

A.     The Property did not sustain covered damage under the Mt. Hawley Policy exceeding the deductible.

B.     Veterans and/or MB breached the Loss Conditions of the Mt. Hawley Policy and failed to cooperate with Mt. Hawley's investigation of the Claim.

C.     A declaratory judgment that Mt. Hawley does not owe any amount to Veterans or MB.

D.      Such other and further relief to which Mt. Hawley may show itself justly entitled.

Dated:  New York, New York
        September 26, 2022

Respectfully submitted,

**CHARTWELL LAW**

By: _____
        Matthew Kraus (MK0621)
        One Battery Park Plaza
        Suite 710
        New York, NY 10004
        Tel. (212) 968-2300
        Fax. (212) 968-2400
        mkraus@chartwelllaw.com

        ***ATTORNEYS FOR PLAINTIFF MT.
        HAWLEY INSURANCE COMPANY***